## COMMERCIAL CASUALTY INS. CO. v. TOWN OF BRECKENRIDGE.

No. 17396.    Opinion Filed Dec. 20, 1927.

(Syllabus.)

1. **Principal and Surety—Intent of Instruments Construed as a Whole.**

Where suit is filed upon a bond executed and conditioned for the faithful performance of a contract, such contract and bond may he considered together to ascertain the intent of the parties, and separate paragraphs or isolated clauses therein cannot be construed as controlling when violative of the intent of the written contract considered in its entirety.

2. **Principal and Surety — Defenses not Available to Surety if Principal Precluded by Waiver or Estoppel.**

A surety can make no defense which its principal waives, or which the principal is precluded from making by reason of his conduct.

3. **Trial—Demurrer to Evidence and Motion for Directed Verdict—When Properly Overruled.**

Where there is any competent evidence offered by the plaintiff, reasonably tending to establish plaintiff's cause of action, and which would reasonably tend to support a verdict and judgment for plaintiff, defendant's demurrer to the evidence and motion for directed verdict should be overruled.

4. **Same—When Peremptory Instruction for Plaintiff Proper.**

It is not error to give peremptory instruc-

tion for the plaintiff where the plaintiff's evidence makes out its case and the defendant introduces no evidence to rebut it. General Accident Fire & Life Assurance Corp. v. Thompson, 101 Okla. 138, 223 Pac. 666.

**5. Appeal and Error—Harmless Error— Mere Irregularities.**

Where the judgment of the trial court is supported by the evidence, and is clearly just, it should not be reversed upon appeal for mere irregularities not affecting the substantial rights of the plaintiff in error.

**6. Same—Judgment Sustained.**

Record examined; held, that the verdict and judgment is supported by the evidence and that the judgment should be affirmed.

Commissioners' Opinion, Division No. 1.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by town of Breckenridge against the Commercial Casualty Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

B. H. Bratney and McKeever, Moore & Elam, for plaintiff in error.

Curran & Scarritt, for defendant in error.

LEACH, C. This action was commenced in the district court of Garfield county by the town of Breckenridge, a municipality, as plaintiff, against Commercial Casualty Insurance Company, a corporation, as defendant, wherein plaintiff sought to recover the sum of $1,030.04 upon a surety bond executed by the defendant to plaintiff. The plaintiff also sought to recover other sums alleged to be due under the contract and bond, but such sums were denied by the court, and no appeal was taken from the action and ruling of the court thereon.

It was alleged that the plaintiff employed an engineer, who prepared plans, specifications, and estimates for the construction of a lighting system for the town; that one McCargar submitted a proposal to construct such system for $5,932, which proposal was accepted by the town, and the bidder executed a bond on which the defendant here was surety, conditioned for the faithful performance and discharge of the conditions of the contract to construct the lighting system; that upon the execution and delivery of such bond, the town delivered to the contractor its bonds in the sum of $6,000; that the principal, McCargar, never took any action towards carrying out his contract, and one John D. Bonford, who had drawn the plans and specifications, undertook the performance of the work and construction of the

lighting system; that the town notified the bonding company that the said Bonford was attempting to carry out the contract, and the bonding company agreed that Bonford should be considered as the principal in the bond. The said Bonford failed to complete the system, and after notice to him and the bonding company, with request that they complete the system, the town employed another party to complete the lighting system; that the cost of material and labor in completing the system under the contract, and the amount paid out by the town, was the sum of $1,030.04, and prayed judgment for recovery of that amount.

The defendant, the Commercial Casualty Insurance Company, filed its demurrer to plaintiff's petition, which was overruled, and it thereupon filed its answer consisting of a general denial.

Upon a trial of the cause, and after plaintiff had introduced its evidence, the defendant demurred to such evidence, which demurrer was overruled by the court, and the defendant electing to stand on its demurrer, the court directed and the jury returned a verdict in favor of plaintiff for the sum of $1,030.04, and defendant brings the cause here for review.

The parties are referred to as they appeared in the trial court.

Plaintiff in error sets up nine specifications of error, which are presented in its brief and disposed of under three propositions or assignments.

The first assignment of error is that the court erred in overruling the demurrer of defendant to the petition of the plaintiff, and in support of such assignment, says the petition discloses that the contract upon which the bond is given and upon which the action is predicated, is void as being contrary to law, and will not therefore support an action or recovery under it, and calls attention to that part of the proposal and contract under which the contractor proposed to construct the lighting system, which part reads as follows:

"We understand that at your option we are to receive as payment for this work, bonds in the sum of $6,000, which are legally issued by the town of Breckenridge, and that said bonds are to be turned over to us as soon as our bond, guaranteeing the faithful performance of the work, is accepted, and we will pay the town of Breckenridge in cash the difference between our bid and $6,000, or $98. Should you desire to pay us in bonds as above mentioned, we understand

that we are to pay you par and accrued interest for said bonds,"

—and asserts that on account of such provision, the bond is unenforceable, because the contract upon which it was given is contrary to law and in violation of statute, under the holding of this court in the case of Town of Buffalo v. Walker, 126 Okla. 6, 257 Pac. 766, and other decisions.

The facts in the case at bar, the nature of the action, and relief sought here, are different from those in Town of Buffalo v. Walker, supra, and warrant a different holding and disposal than that urged by plaintiff in error.

Section 5014, C. O. S. 1921, is as follows:

"The object of a contract is the thing which it is agreed, on the part of the party receiving the consideration, to do or not to do."

Let us see what the object of the contract or bond sought to be enforced in this case was. After the preparation of the plans and specifications for the proposed lighting system, the town invited bids or proposals for the construction of such lighting system, and, under the instructions to bidders, it is provided:

"A surety bond assuring the faithful performance of the contract will be required in the sum equal to 100 per cent of the contract. This bond shall be filed with the town clerk."

Also:

"These bonds shall be in accordance with the laws of the state of Oklahoma covering bonds for the protection of towns in the construction of public improvements."

The invitation for bids, and the instruction to bidders, referred to the plans and specifications, and it will be observed from an examination of the plans and specifications, that no reference therein is made in any manner to the exchange of or payment of the work in bonds. The bid or proposal of the principal, offering to construct and complete the system according to the plans and specifications' contained the following paragraph relating to the furnishing of the bond sued upon:

"Accompanying this proposal is a certified check in the amount of ten per cent. (10%) of the bid which shall become the property of the town of Breckenridge if this proposal be accepted by you, and we shall fail and refuse to execute bonds within twenty (20) days from date hereof each in a sum equal to one hundred per cent. (100%) of the herein specified total contract price, said bonds to be in accordance with the laws of the

state of Oklahoma, governing bonds for the protection of public improvements, as outlined in the specifications attached and shall guarantee the payment in full of all bills and accounts for contract; and the faithful compliance with the specifications hereto attached."

The acceptance of the bid or proposal of the contractor by the town is as follows:

"Acceptance.
§State of Oklahoma, County of Garfield, Town of Breckenridge—ss.

"The foregoing proposal is hereby accepted by the undersigned, for the town of Breckenridge, Okla., this 23 day of April, 1923, for the total lump sum of five thousand nine hundred thirty-two dollars ($5,932). Witness our hands and seals of said town. [Signed] H. E. Walker, Chairman of Board of Trustees. Attest: W. G. Shaw, Town Clerk."

The bond sued upon contains the following:

"Whereas, said principal has entered into a certain contract in writing, bearing date April 23, 1923, with the said obligee for the construction of a transmission line and distributing system in the town of Breckenridge, Okla., according to plans and specifications, a copy of which is or may be attached hereto, and is hereby referred to and made a part hereof.

"Now, therefore, the condition of this instrument is such that if the principal indemnifies the obligee against loss or damage directly arising by reason of the failure of the principal faithfully to perform the above-mentioned contract, then this instrument shall be null and void. * * *"

We think it apparent, from a consideration of the instrument as a whole and the paragraphs referred to, that the object of the bond sued upon was to secure the faithful construction of the lighting system for the town according to the plans and specifications. To that extent it was certainly lawful. It is true that the bid or proposal contained the paragraph giving the town the option to pay the contractor in bonds, but we do not think such provision in the contract was within the purview of the bond, or that the bond sued upon guaranteed the carrying out of that part of the proposal. That part of the proposal was merely optional with the town, and in the acceptance of the contractor's bid or proposal by the town, it does not necessarily follow or show that the town exercised such option or intended to do so. At the time and date of the execution and delivery of the bond sued upon, no illegal act had been done or contract entered into between the parties.

Section 5039, C. O. S. 1921, provides:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Section 5046, C. O. S. 1921, provides:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

In the case of Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 Pac. 213, the fourth and fifth paragraphs of the syllabus read:

"Section 1346, Rev. Laws 1910 (sec. 5447, C. O. S. 1921), provides that the rule of the common law requiring a strict construction of the obligation of a surety shall have no application to the obligations of a surety for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance.

"If language in a bond of suretyship for hire is ambiguous and susceptible of two constructions, one of which will give effect to the bond, the other render it void at the time of its execution, that construction should be adopted which will make it effective "

See, also, Southwestern Surety Ins. Co. v. Marlow, 78 Okla. 313, 190 Pac. 672.

It is true that the petition of plaintiff seeks to recover the sum of $98 from the defendant, upon the theory that the bond guaranteed the payment of such sum under that clause or proposal that the bonds of the town would be accepted by the contractor, but we do not think such construction and theory warranted, or that the bond covers such paragraph. The court by its ruling in effect sustained the demurrer of the defendant, or its motion for judgment upon that cause.

The incorporation of such cause and the pleading of the same in the petition does not, to our mind, vitiate or make illegal the bond, for the reason such theory and plea was unwarranted.

The plaintiff would have been entitled to recover in this cause the amount and sum which it did recover without having to plead or prove that the town did deliver to the contractor the bonds of the town.

"The test whether a demand connected with an illegal act can be enforced, is, whether the plaintiff acquires any aid from the illegal transaction to establish his cause."

"But it does not show that every contract which is incidentally connected with or grows out of such a transaction is tainted with its vice." Oliphant v. Markham, 79 Tex. 543, 23 Am. St. Rep. 363.

A similar holding to that in the last-quoted case will be found in the case of Citizens Nat. Bank of Chickasha v. Mitchell, 24 Okla. 488, 103 Pac. 720; Barnes v. Lynch, 9 Okla. 158, 59 Pac. 995.

Even were it assumed that the bond sued upon covered the objectionable clause in the bid, then such part would be a separate and distinct object in the contract from that relating to the construction of the lighting system, and would be severable and come within the provisions of section 5018, C. O. S. 1921, which is as follows:

"Where a contract has several distinct objects, of which one at least is lawful and one at least is unlawful in whole or in part, the contract is void as to the latter, and valid as to the rest."

See Culver v. Diamond, 64 Okla. 271, 167 Pac. 223; Star v. Lowery 102 Okla. 48, 220 Pac. 467.

Under the holdings in the above causes, the above statute was construed to authorize the enforcement of that part or object of a contract which was lawful even though another part be unlawful. It necessarily follows that, even were plaintiff in error correct in its construction of the clause mentioned as to its illegality, for the reasons stated the other provision or object of the bond or contract, which is the basis of the suit, is nevertheless valid and enforceable.

As to a lawful consideration for the bond, the petition of the plaintiff, paragraph 8, reads in part as follows:

"Plaintiff further says Commercial Casualty Insurance Company, as surety for said principal for hire, and having received the usual premium therefor and executed and delivered to the town its bonds in the penal sum of $5,932. * * * "

Section 5027, C. O. S. 1921, provides:

"A written instrument is presumptive evidence of a consideration."

Section 5028, C. O. S. 1921, provides:

"The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

See St. L. & S. F. R. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103.

We do not find that the bond sued upon is in violation of a statute, but even though we were compelled to so hold, the judgment

might be upheld and sustained under the rule that the public interest requires it, and that it is necessary in order to save from injury persons for whose protection the violated statute was executed. Such rule will be found in R. C. L. vol. 6, p. 701; 9 Cyc. 550; 12 L. R. A. (N. S.) 618 (footnote); Lester v. Bank, 33 Md. 558, 3 Am. Rep. 211; Flynn Construction Co. v. Leininger, 125 Okla. 197, 257 Pac. 374.

Plaintiff in error cites and calls attention to that part of the bond sued upon, which provides that the company shall not be liable unless the consideration to be paid the principal by the terms of said contract shall be cash. In response thereto we call attention to the following authorities:

"Separate paragraphs or isolated clauses cannot be construed as controlling when violative of the intent of the written contract considered in its entirety." Henderson v. Ponca City Milling Co., 116 Okla. 169, 243 Pac. 743.

"In the construction of a contract, the real intention of the parties may control the letter thereof, or the strict letter may be enlarged so as to give effect to the intention as gathered from the whole contract, when read in the light of the circumstances under which it was executed." Quinette v. Mitschrich, 109 Okla. 281, 235 Pac. 530.

In the opinion in the above cited case we find the following:

"The conduct of a party to a contract, which prevents or dispenses with performance by the adverse party, is equivalent to a waiver of the right to require performance. 13 C. J. 648; Schaffer v. Blair, 149 U. S. 248, 13 Sup. Ct. 856, 37 L. Ed. 721; 6 C. J. 745."

"The sureties can ordinarily make no defense that could not be made by their principal. The measure of his responsibility is the measure of theirs, and any act of the principal which estops him from setting up a defense personal to himself operates equally against his surety." 21 R. C. L. 999.

The case of Van Kirk v. Adler, 111 Ala. 104, 20 South. 336, lays down the rule that a surety can make no defense which the principal waives, or by his conduct precludes himself from making.

See, also, Boone County v. Jones, 54 Iowa, 699, 2 N. W. 987; McCabe v. Rainey, 32 Ind. 309; Point Pleasant v. Greenlee, 63 W. Va. 207, 60 S. E. 601; M. S. Cohn Gravel Co. v. Southern Surety Co., No. 17388, vol. 44, Okla. App. Ct. Rep., page 488, decided Dec. 6 1927 (pending on rehearing).

The parties to the contract evidently con-

sidered the bonds as cash, and the principal, or surety, cannot now, under the facts, and after having accepted the consideration. be relieved of liability upon the clause referred to.

If the petition contains allegations which entitle the pleader to any relief, the demurrer should be overruled. Cassidy v. Rose, 108 Okla. 283, 236 Pac. 591.

For the reasons stated, we therefore hold that the demurrer of the defendant to plaintiff's petition was correctly overruled, and judgment on the pleadings for defendant denied.

Under defendant's fourth assignment of error, it is urged that the court erred in receiving certain incompetent, irrelevant and improper evidence. The evidence complained of is that, wherein the witness Storrs was permitted to testify that he furnished certain material and performed labor for the plaintiff in the completion of the lighting system, and was permitted to testify that it required all the material which he used and all the labor performed, and that the same was necessary to complete the plant, without going into detail and showing what had been done and performed on the system at and prior to the time he started working on it. The witness testified what he did in the way of completing the system, and enumerated the materials used, and apparently was competent to testify and give his opinion as to whether or not the work and materials were necessary to complete the system. We do not consider the admission of the testimony prejudicial or reversible error.

Under plaintiff in error's fifth assignment, it is urged that the court erred in overruling its demurrer to plaintiff's evidence, and says the evidence failed to establish the alleged breach of contract, or of what the breach consisted, and the extent of damage suffered. Considerable correspondence and communications were introduced in evidence addressed to the contractor and surety company, requesting them to complete the work, and advising the surety company that unless the system was completed it would be necessary to complete the same at their expense.

The plans, specifications, and contract were introduced in evidence, which called for the installation of a complete electric lighting system. The electrical contractor, who completed the installing of the system, testified on behalf of the plaintiff, and stated that he had had 22 years of experience in that kind of work. He gave an itemized statement

of all the material, and its cost, that was used by him in his work, such material being similar to that called for under the plans and specifications. In answer to the question: "What did you do out there, Mr. Storrs"? he answered:

"Why, I proceeded to finish some work that had been started there on their high-line and distributing system, putting up wires, cross-arms, anchors, guy wires, transformers, lightning arrestors, poles and such apparatus as was necessary to complete the system."

He also stated that it required all the material used and labor performed by him to complete the system.

Having in view the plans and specifications which were introduced in evidence, and considering the same in connection with the testimony offered. it would seem that no other conclusion could have well been reached, except that such expense, labor and material were necessary to complete the system as contracted for. It possibly could have been more clearly brought out and shown by the evidence, to just what extent the work had progressed at the time the town required the services of witness Storrs, to complete the system, but taking the evidence as a whole, it appears the plaintiff made out a prima facie case, sustaining its pleading, and that the court under the record and evidence correctly instructed the jury to return a verdict for the amount of the judgment allowed.

From an examination of the entire record, and upon the uncontroverted evidence, it appears the town, the plaintiff, was entitled to judgment. The judgment of the trial court is therefore affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.